## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| **In re Joseph Carmen DiCaro** | ) | **Chapter 11 Proceeding** |
| | ) | |
| **Debtor** | ) | **Case No. 08-32682** |
| | ) | |
| | ) | **Hon. John H. Squires** |
| | ) | |

### FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (A) APPROVING THE DEBTOR'S DISCLOSURE STATEMENT PURSUANT TO SECTIONS 1125 AND 1126(B) OF THE BANKRUPTCY CODE, AND (B) CONFIRMING FIFTH AMENDED PLAN OF REORGANIZATION PROPOSED BY JOSEPH CARMEN DICARO DATED APRIL 6, 2009

Joseph Carmen DiCaro, as debtor and debtor in possession (the "Debtor"), having proposed and filed (A) Fifth Amended Plan of Reorganization Proposed by Joseph Carmen DiCaro Dated April 6, 2009 (including all amendments and modifications thereof and exhibits thereto, the "Plan"),[1] filed with the United States Bankruptcy Court for the Northern District of Illinois (the "Court" or the "Bankruptcy Court") (Docket. No. 64), a copy of which is annexed hereto as Exhibit A (i) the Debtor's Second Amended Disclosure Statement Dated: February 26, 2009 (the "Disclosure Statement") (Docket No. 37) and (ii) appropriate ballots for voting on the Plan (the "Ballots"), in the forms attached as Exhibit B (the "Balloting Report" to the Affidavit of Gregory J. Jordan Regarding Solicitation and Tabulation of Votes in Connection with Third Amended Plan of Reorganization Proposed by Joseph Carmen DiCaro Dated March 20, 2009), filed with the Court on March 23, 2009 (the "Voting Certification") (Docket. No. 50), having been duly transmitted to holders of Claims in compliance with the procedures (the "Solicitation Procedures") set forth in the Voting Certification; and in accordance with the Court's order entitled Order (A) Scheduling Hearing to Approve Adequacy of Disclosure Statement and to

---

[1] Unless otherwise defined herein, capitalized terms shall have the meanings assigned to those terms in the Plan. The rules of construction in section 102 of the Bankruptcy Code shall apply to this Order.

Confirm Plan of Reorganization; (B) Establishing Objection Deadline; (C) Approving Form of

Ballots, Voting Deadline and Solicitation Procedures; and (D) Approving Form of Notice (the

"Scheduling Order") (Docket No. 36), which Scheduling Order, among other things, scheduled

the hearing to approve the Disclosure Statement on April 7, 2009 (the "Disclosure Statement

Hearing"), to be immediately followed by a hearing to consider confirmation of the Plan (the

"Confirmation Hearing," together with the Disclosure Statement Hearing, the "April 7, 2009

Hearings"); and due notice of the April 7, 2009 Hearings having been given to holders of Claims

against the Debtor and other parties in interest in compliance with the Bankruptcy Code, the

Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules"), the Scheduling Order and the

Solicitation Procedures, as established by the affidavits of service and mailing filed with the

Court; and such notice being sufficient under the circumstances and no further notice being

required; and based upon and after full consideration of the entire record of the April 7, 2009

Hearings, including (A) the Disclosure Statement, the Plan and the Voting Certification, (B) the

Debtor's memorandum of law, dated March 23, 2009, in support of confirmation of the Plan and

(C) the Declaration of Joseph Carmen DiCaro in support of confirmation of the Plan, dated

March 23, 2009 (the "DiCaro Declaration"); and the Court being familiar with the Disclosure

Statement and the Plan and other relevant factors affecting the Debtor's Chapter 11 Case; and the

Court being fully familiar with, and having taken judicial notice of, the entire record of the

Debtor's Chapter 11 Case; and upon the arguments of counsel and the evidence proffered and

adduced at the April 7, 2009 Hearings; and the Court having found and determined that the

Disclosure Statement should be approved and the Plan should be confirmed as reflected by the

Court's rulings made herein and at the April 7, 2009 Hearings; and after due deliberation and

sufficient cause appearing therefor; the Court hereby FINDS, DETERMINES, AND CONCLUDES that:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

A)     **Findings and Conclusions.** The findings and conclusions set forth herein and in the record of the April 7, 2009 Hearings constitute the Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, each is adopted as such.

B)     **Jurisdiction, Venue, Core Proceeding (28 U.S.C. §§ 157(b)(2), 1334(a)).** The Court has jurisdiction over the Debtor's Chapter 11 Case pursuant to 28 U.S.C. § 1334. Approval of the Disclosure Statement and confirmation of the Plan are core proceedings pursuant to 28 U.S.C. § 157(b) and this Court has jurisdiction to enter a final order with respect thereto. The Debtor is an eligible debtor under section 109 of the Bankruptcy Code. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The Debtor is a proper plan proponent under section 1121(a) of the Bankruptcy Code.

C)     **Chapter 11 Petition.** On November 28, 2008 (the "Commencement Date"), the Debtor commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code (the "Chapter 11 Case"). The Debtor is authorized to continue to operate his business and manage his properties as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed pursuant to section 1104 of the Bankruptcy Code. No statutory committee of unsecured creditors has been appointed pursuant to section 1102 of the Bankruptcy Code.

D)     **Judicial Notice.** The Court takes judicial notice of the docket of the Chapter 11 Case
maintained by the Clerk of the Court, including all pleadings and other documents filed, all
orders entered and all evidence and arguments made, proffered or adduced at the hearings held
before the Court during the pendency of the Chapter 11 Case.

E)     **Burden of Proof.** The Debtor has the burden of proving the elements of sections 1129(a)
and (b) of the Bankruptcy Code by a preponderance of the evidence. The Debtor has met such
burden.

F)     **Adequacy of Disclosure Statement.** The Disclosure Statement (a) contains sufficient
information of a kind necessary to satisfy the disclosure requirements of all applicable non-
bankruptcy law, (b) contains "adequate information" (as such term is defined in section
1125(a)(1) and used in section 1126(b)(2) of the Bankruptcy Code) with respect to the Debtor,
the Plan and the transactions contemplated therein and (c) is approved in all respects.

G)     **Voting.** As evidenced by the Voting Certification, which is accepted as properly
supporting the Plan, votes to accept or reject the Plan have been solicited and tabulated fairly, in
good faith and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules, the
Local Bankruptcy Rules promulgated by the United States Bankruptcy Court for the Northern
District of Illinois (the "Local Rules") and applicable non-bankruptcy law.

H)     **Solicitation.** Following the Commencement Date, the Plan, the Disclosure Statement, the
Ballots and notice of the April 7, 2009 Hearings, were transmitted and served in compliance with
the Bankruptcy Rules, including Bankruptcy Rules 3017 and 3018, the Local Rules and the
Scheduling Order. The forms of the Ballots adequately addressed the particular needs of this
Chapter 11 Case and were appropriate for holders of Claims in the Class 1C – Secured Tax
Claim of the Illinois Department of Revenue, Class 1D – Secured Tax Claim of the Internal

Revenue Service, Class 2A – Priority Tax Claim of the Illinois Department of Revenue, Class 2B – Priority Tax Claim of the Internal Revenue Service, Class 3A – General Unsecured Claims and Class 3B – Convenience Class, entitled under the Plan to vote to accept or reject the Plan. The period during which the Debtor solicited acceptances to the Plan was a reasonable period of time for holders to make an informed decision to accept or reject the Plan. The Debtor was not required to solicit votes from the holders of Class 1A – Secured Claim of Chase Home Mortgage and Class 1B – Secured Claim of Planet Toyota, as each such class is unimpaired under the Plan. The Debtor also was not required to solicit votes from the holders of Interests; as such Class receives no recovery under the Plan and is deemed to reject the Plan. As described in and as evidenced by the Voting Certification, the transmittal and service of the Plan, the Disclosure Statement, the Ballots and the notice of the April 7, 2009 Hearings (all of the foregoing, the "Solicitation") was timely, adequate and sufficient under the circumstances. The Solicitation of votes on the Plan complied with the Solicitation Procedures, was appropriate and satisfactory based upon the circumstances of the Chapter 11 Case and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and any other applicable rules, laws and regulations. The Debtor, who will be termed the "Reorganized Debtor" following confirmation, is entitled to the protection of section 1125(e) of the Bankruptcy Code.

I)      **Notice.** As is evidenced by the Voting Certification, the transmittal and service of the Plan, the Disclosure Statement, and Ballots were adequate and sufficient under the circumstances, and all parties required to be given notice of the April 7, 2009 Hearings (including the deadline for filing and serving objections to confirmation of the Plan) have been given due, proper, timely and adequate notice in accordance with the Scheduling Order; and in

-5-

compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and applicable non-bankruptcy law; and such parties have had an opportunity to appear and be heard with respect thereto. No other or further notice is required.

### Compliance with the Requirements of Section 1129 of the Bankruptcy Code

J)      **Plan Compliance with the Bankruptcy Code (11: U.S.C. §1129(a)(1)).** The Plan complies with the applicable provisions of the Bankruptcy Code and, as required by Bankruptcy Rule 3016, the Plan is dated and identifies the Debtor, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.

1.      **Proper Classification (11 U.S.C. §1122, 1123(a)(1)).** In addition to administrative Expense Claims, Articles II and IV of the Plan classify seven (7) Classes of Claims and Equity Interests. The Claims and Equity Interests placed in each Class are substantially similar to other Claims and Equity Interests, as the case may be, in each such Class. Valid business, factual and legal reasons exist for separately classifying the various Classes of Claims and Equity Interests created under the Plan, and such Classes do not unfairly discriminate between holders of Claims and Equity Interests. The Plan therefore satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

2.      **Convenience Class (11 U.S.C. §1122(b).** In Articles II and IV, the Debtor designation of a Convenience Class pursuant to Section 1122(b) of the Bankruptcy Code, for the Holders of Claims in the amount of $800.00 or less is reasonable and necessary for administrative convenience based on the small amounts to be paid to the Holders of such Claims.

3.      **Specified Unimpaired Classes (11 U.S.C. § 1123(a)(2)).** Article IV of the Plan specifies that Class 1A – Secured Claim of Chase Home Mortgage and Class 1B –

Secured Claim of Planet Toyota are unimpaired under the Plan within the meaning of section 1124 of the Bankruptcy Code, thereby satisfying section 1123(a)(2) of the Bankruptcy Code.

4.  **Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3)).** Article IV of the Plan designates Class 1C – Secured Tax Claim of the Illinois Department of Revenue, Class 1D – Secured Tax Claim of the Internal Revenue Service, Class 2A – Priority Tax Claim of the Illinois Department of Revenue, Class 2B – Priority Tax Claim of the Internal Revenue Service, Class 3A – General Unsecured Claims, Class 3B – Convenience Class and Equity Interests as impaired within the meaning of section 1124 of the Bankruptcy Code and specifies the treatment of the Claims and Equity Interests in those Classes, thereby satisfying section 1123(a)(3) of the Bankruptcy Code.

5.  **No Discrimination (11 U.S.C. § 1123(a)(4)).** The Plan provides for the same treatment by the Debtor for each Claim or Equity Interest in each respective Class unless the holder of a particular Claim or Equity Interest has agreed to a less favorable treatment of such Claim or Equity Interest, thereby satisfying section 1123(a)(4) of the Bankruptcy Code.

6.  **Implementation of the Plan (11 U.S.C. § 1123(a)(5)).** The Plan provides adequate and proper means for the implementation of the Plan, thereby satisfying section 1123(a)(5) of the Bankruptcy Code, including the assumption of the Debtor's seat lease with the Mercantile Exchange.

7.  **Impairment/Unimpairment of Classes of Claims and Equity Interests (11 U.S.C. § 1123(b)(1)).** Pursuant to Article III of the Plan, Class 1A – Secured Claim of

Chase Home Mortgage and Class 1B – Secured Claim of Planet Toyota are unimpaired, as contemplated by section 1123(b)(1) of the Bankruptcy Code.

8.     **Assumption and Rejection (11 U.S.C. 1123(b)(2)).** Article VIII of the Plan, which governs the assumption and rejection of executory contracts and unexpired leases, meets the requirements of section 365(b) of the Bankruptcy Code. There have been no objections to the Debtor's assumption of his lease of a seat on the Chicago Mercantile Exchange.

9.     **Cure of Defaults (11 U.S.C. § 1123(d)).** There are no cure costs to be paid by the Debtor or default claims associated with each executory contract and unexpired lease to be assumed pursuant to the Plan in accordance with section 365(b)(1) of the Bankruptcy Code. Thus, the Plan complies with section 1123(d) of the Bankruptcy Code.

10.    **Additional Plan Provisions (11 U.S.C. § 1123(b)(6)).** The provisions of the Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1123(b)(6) of the Bankruptcy Code.

11.    **The Debtor's Compliance with the Bankruptcy Code (11 U.S.C. §1129(a)(2)).** The Debtor has complied with the applicable provisions of the Bankruptcy Code. Specifically:

   a)  The Debtor is an eligible debtor under section 109 of the Bankruptcy Code;

   b)  The Debtor has complied with applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by orders of the Bankruptcy Court; and

   c)  The Debtor has complied with the applicable provisions of the Bankruptcy Code, including sections 1125 and 1126(b), the Bankruptcy Rules, the Local Rules, applicable non-bankruptcy law, the Scheduling Order and all other applicable law in

transmitting the Plan, the Disclosure Statement, the Ballots and related documents and notices and so complied in soliciting and tabulating the votes on the Plan.

12.     **Plan Proposed in Good Faith (11 U.S.C. § 112.9(a)(3)).** The Debtor has proposed the Plan, including the Exit Facility contemplated thereunder and all documents necessary to effectuate the Plan, in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code. The Debtor's good faith is evident from the facts and record of this Chapter 11 Case, the Disclosure Statement, the record of the April 7, 2009 Hearings and other proceedings held in this Chapter 11 Case. The Plan was proposed with the legitimate and honest purpose of maximizing the value of the Debtor's estate and to effectuate a successful reorganization of the Debtor.  The Plan, including all documents necessary to effectuate the Plan, was negotiated at arms' length amongst representatives of the Debtor and his creditors generally and, in particular, the Illinois Department of Revenue, and such parties respective professionals. The holders of Class 1C – Secured Tax Claim of the Illinois Department of Revenue, Class 2A – Priority Tax Claim of the Illinois Department of Revenue and Class 3B – Convenience Class voted to accept the Plan and support confirmation of the Plan. Further the Plan's classification and injunction provisions have been negotiated in good faith and at arms' length, are consistent with sections 105, 1122, 1123(b)(6), 1123(b)(3)(A), 1129, and 1142 of the Bankruptcy Code and are each necessary for the Debtor's successful reorganization.

K)     **Payment for Services or Costs and Expenses (11 U.S.C. 1129(a)(4)).**  Any payment made or to be made by the Debtor for services or for costs and expenses of the Debtor's professionals in connection with his Chapter 11 Case, or in connection with the Plan and incident

to the Chapter 11 Case, has been approved by, or is subject to the Court's approval as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy Code.

L)      **Insiders (11 U.S.C. § 1129(a)(5)).** Section 1129(a)(5) of the Bankruptcy Code does not apply in the Debtor's case, since he is an individual.

M)      **No Rate Changes (11 U.S.C. § 1129(a)(6)).** The Plan does not provide for rate changes by the Reorganized Debtor. Thus, section 1129(a)(6) of the Bankruptcy Code is not applicable in this Chapter 11 Case.

N)      **Best Interest of Creditors (11 U.S.C. § I 129(a)(7)).** The Plan satisfies section 1129(a)(7) of the Bankruptcy Code. The liquidation analysis provided in the Disclosure Statement and other evidence proffered or adduced at the Confirmation Hearing (i) are persuasive and credible, (ii) have not been controverted by other evidence and (iii) establish that each holder of an impaired Claim or Interest either has accepted the Plan or will receive or retain under the Plan, on account of such Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount that such holder would receive or retain if the Debtor's assets were liquidated under chapter 7 of the Bankruptcy Code on such date.

O)      **Acceptance by Impaired Classes (11 U.S.C. § 1129(a)(8)).** Class 1A – Secured Claim of Chase Home Mortgage and Class 1B -- Secured Claim of Planet Toyota are Classes of unimpaired Claims that are conclusively presumed to have accepted the Plan in accordance with section 1126(f) of the Bankruptcy Code. Holders of Claims in the Class 1C -- Secured Tax Claim of the Illinois Department of Revenue, Class 2A – Priority Tax Claim of the Illinois Department of Revenue, Class 2B – Priority Tax Claim of the Internal Revenue Service and Class 3B – Convenience Class have voted to accept the Plan in accordance with sections 1126(b) and (c) of the Bankruptcy Code, without regard to the votes of insiders of the Debtor.  The Debtor, as the

-10-

Holder of an Interest, is impaired by the Plan and is not entitled to receive or retain any property under the Plan and, therefore, is deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Pursuant to section 1129(b)(1) of the Bankruptcy Code, the Plan may be confirmed notwithstanding the fact that Class 3A – General Unsecured Claims are impaired and have rejected the Plan.

P)      **Treatment of Administrative Expense Claims, Priority Tax Claims and Other Priority Claims (11 U.S.C. §1129(a)(9)**. The treatment of Allowed Administrative Expense Claims under the Plan satisfies the requirements of section 1129(a)(9)(A) of the Bankruptcy Code. The treatment of Other Priority Claims satisfies the requirements of section 1129(a)(9)(B) of the Bankruptcy Code. The treatment of Priority Tax Claims satisfies the requirements of section 1129(a)(9)(C) of the Bankruptcy Code. Under the Plan, no holder of an Administrative Expense Claim is required to file a proof of claim or request for payment of administrative expenses under section 503(b) of the Bankruptcy Code, except as set forth in the Plan. On and after the Effective Date, all such valid Claims shall be paid in the ordinary course of business of the Reorganized Debtor, subject to the Debtor's ability to dispute such Claims in accordance with the Plan and applicable non-bankruptcy law.

Q)      **Acceptance by Impaired Class (11 U.S.C. § 1129(a)(10))**. Class 1C – Secured Tax Claim of the Illinois Department of Revenue, Class 2A – Priority Tax Claim of the Illinois Department of Revenue and Class 3B – Convenience Class voted to accept the Plan by the requisite majorities, determined without including any acceptance of the Plan by any insider, thereby satisfying the requirements of section 1129(a)(10) of the Bankruptcy Code.

R)      **Feasibility (11 U.S.C. §1129(a)(11))**. The information in the Disclosure Statement, the DiCaro Declaration and the evidence proffered or adduced at the Confirmation Hearing (i) is

persuasive and credible, (ii) has not been controverted by other evidence and (iii) establishes that the Plan is feasible, and that there is a reasonable prospect of the Reorganized Debtor being able to meet his financial obligations under the Plan and his business and other expenses in the ordinary course, and that confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Reorganized Debtor, thereby satisfying the requirements of section 1129(a)(11) of the Bankruptcy Code.

S)    **Payment of Fees (11 U.S.C. § 1129(a)(12)).** All fees payable under section 1930 of title 28, United States Code, as determined by the Bankruptcy Code, have been or will be paid on or before the Effective Date under the terms of the Plan, thereby satisfying the requirements of section 1129(a)(12) of the Bankruptcy Code.

T)    **Continuation of Retiree Benefits (11 U.S.C. § 1129(a)(13)).** The Debtor did not provide retiree benefits, as that term is defined in Section 1114 of the Bankruptcy Code, at any time prior to Confirmation. Accordingly, the Plan satisfies the requirements of section 1129(a)(13) of the Bankruptcy Code.

U)    **Domestic Support Obligations (11 U.S.C. § 1129(a)(14)).** The Debtor has paid all domestic support obligations required by a judicial or administrative order, or by statute under such order or such statute for such obligation that first became payable after the date of the filing of the petition. Accordingly, The Debtor complied with his obligations under section 1129(a)(14) of the Bankruptcy Code.

V)    **Debtor's Payments to Unsecured Creditors (11 U.S.C. § 1129(a)(15)).** The Debtor, through his Plan, has provided the value, as of the effective date of the Plan, of the property to be distributed under the plan on account of unsecured claims that is not less than the value of the property to be distributed under the Plan than the Debtor's projected disposable income (as

-12-

defined in section 1325 (b)(2)) to be received during the 5-year period beginning on the date that
the first payment is due under the Plan.

W)    **No Applicable Non-bankruptcy Law Regarding Transfers (11 U.S.C. §1129(a)(16)).**
The Debtor is neither a corporation, nor a moneyed, business or commercial corporation, and
accordingly, section 1129(a)(16) of the Bankruptcy Code is inapplicable in this Chapter 11 Case.

X)    **No Unfair Discrimination; Fair and Equitable (11 U.S.C. § 1129(b)).** The Debtor, as
the Holder of an Interest is deemed to have rejected the Plan. Based upon the evidence
proffered, adduced and presented by the Debtor at the Confirmation Hearing, the Plan does not
discriminate unfairly with respect to the aforementioned Classes and is fair and equitable with
respect the aforementioned Classes, as required by sections 1129(b)(1) and (b)(2) of the
Bankruptcy Code, because no holder of any interest that is junior to each such Class will receive
or retain any property under the Plan on account of such junior interest, and no holder of a Claim
in a Class senior to such Classes is receiving more than 100% on account of its Claim. Thus, the
Plan may be confirmed notwithstanding the deemed rejection of the Plan by these Classes.

Y)    **Only One Plan (11 U.S.C. § 1129(c)).** The Plan is the only plan filed in this Chapter 11
Case, and accordingly, section 1129(c) of the Bankruptcy Code is inapplicable in this Chapter 11
Case.

Z)    **Principal Purpose of the Plan (11 U.S.C. § 1129(d)).** The principal purpose of the Plan
is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities
Act, and no governmental entity has objected to the confirmation of the Plan on any such
grounds. The Plan, therefore, satisfies the requirements of section 1129(d) of the Bankruptcy
Code.

AA)   **Good Faith Solicitation (11 U.S.C. § 1125(e)).** Based on the record before the Court in this Chapter 11 Case, including evidence presented at the April 7, 2009 Hearings, the Debtor, the Reorganized Debtor and the attorneys retained in this Bankruptcy Case by such persons (i) have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code in compliance with the applicable provisions of the Bankruptcy Code, Bankruptcy Rules, the Local Rules and any applicable non-bankruptcy law, rule or regulation governing the adequacy of disclosure in connection with all their respective activities relating to the solicitation of acceptances to the Plan and their participation in the activities described in section 1125 of the Bankruptcy Code and (ii) shall be deemed to have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code, and, therefore, are not, and on account of such offer, issuance and solicitation will not be, liable at any time for the violation of any applicable law, rule or regulation governing the solicitation of acceptances or rejections of the Plan, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code.

BB)   **Satisfaction of Confirmation Requirements.** Based upon the foregoing, the Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

CC)   **Implementation.** All documents necessary to implement the Plan have been negotiated in good faith and at arms' length and shall be valid, binding and enforceable agreements and not be in conflict with any federal or state law.

DD)   **Injunction.** The Court has jurisdiction under 28 U.S.C. sections 1334(a) and (b) to approve the injunction set forth in Article IX of the Plan. Section 105(a) of the Bankruptcy Code permits issuance of the injunction set forth in Article XI of the Plan if, as has been established here based upon the record in the Chapter 11 Case and the evidence presented at the April 7, 2009 Hearings, such provision (i) was integral to the agreement among the various parties in

-14-

interest and is essential to the formulation and implementation of the Plan, as provided in section

1123 of the Bankruptcy Code, (ii) confers substantial benefits on the Debtor's estate, (iii) is fair,

equitable and reasonable and (iv) is in the best interests of the Debtor, his estate and parties in

interest. Pursuant to section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019(a),

the injunction set forth in the Plan and implemented by this Confirmation Order is fair, equitable,

reasonable and in the best interests of the Debtor, the Reorganized Debtor and his estate and

creditors. Accordingly, based upon the record of this Chapter 11 Case, the representations of the

parties and/or the evidence proffered, adduced and/or presented at the Confirmation Hearing, this

Court finds that the injunction set forth in Article IX of the Plan is consistent with the

Bankruptcy Code and applicable law. The failure to implement the injunction, exculpation and

releases would seriously impair the Debtor' ability to confirm the Plan.

EE)    **Compromise of Controversies.** Except as otherwise provided in the Plan and this

Confirmation Order, the Plan is a settlement between and among the Debtor and his creditors of

all Claims and litigation against the Debtor, pending or threatened, or that was or could have

been commenced against the Debtor prior to the date of entry of this Confirmation Order (other

than the Reorganized Debtor's ability to prosecute objections to Claims and other retained causes

of action to the extent preserved under the Plan).

FF)    **Good Faith.** The Debtor will be acting in good faith if he proceeds to (i) consummate the

Plan, including transfers contemplated thereby, and (ii) takes the actions authorized and directed

by this Confirmation Order.

GG)    **Retention of Jurisdiction.** The Court may properly and, upon the Effective Date, shall

retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Case

and section 1142 of the Bankruptcy Code.

## ORDER

ACCORDINGLY, IT IS HEREBY ORDERED, ADJUDGED, DECREED AND DETERMINED THAT:

(1)  **Findings of Fact and Conclusions of Law.** The above-referenced findings of fact and conclusions of law are hereby incorporated by reference, as though fully set forth herein, and shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable herein by Bankruptcy Rule 9014. To the extent that any finding of fact shall be determined to be a conclusion of law, it shall be deemed so, and vice versa.

(2)  **Notice of the April 7, 2009 Hearings.** Notice of the April 7, 2009 Hearings complied with the terms of the Scheduling Order, was appropriate and satisfactory based upon the circumstances of the Chapter 11 Case and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules.

(3)  **Solicitation,** The solicitation of votes on the Plan complied with the Solicitation Procedures, was appropriate and satisfactory based upon the circumstances of the Chapter 11 Case and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and applicable non-bankruptcy law.

(4)  **Ballots.** The forms of Ballots annexed to the Voting Certification are in compliance with Bankruptcy Rule 3018(c), conform to Official Form Number 14 and are approved in all respects.

(5)  **The Disclosure Statement.** The Disclosure Statement (a) contains adequate information of a kind generally consistent with the disclosure requirements of applicable non-bankruptcy law, (b) contains "adequate information" (as such term is defined in section 1125(a)(1) and used in section 1126(b)(2) of the Bankruptcy Code) with respect to the

-16-

Debtor, the Plan and the transactions contemplated therein and (c) is approved in all respects.

(6) **Confirmation of the Plan**. The Plan and each of its provisions shall be, and hereby are, CONFIRMED under section 1129 of the Bankruptcy Code. The terms of the Plan are incorporated by reference into and are an integral part of this Confirmation Order.

(7) **Objections**. All Objections, responses to, and statements and comments, if any, in opposition to, the Plan and/or the Disclosure Statement, respectively, other than those withdrawn with prejudice in their entirety prior to, or on the record at, the April 7, 2009 Hearings, shall be and hereby are, overruled in their entirety for the reasons stated on the record.

(8) **Binding Effect**. On or after entry of this Confirmation Order and subject to the occurrence of the Effective Date, the provisions of the Plan shall bind the Debtor, the Reorganized Debtor, any and all non-Debtor parties to executory contracts and unexpired leases with any of the Debtor, any other party in interest in the Chapter 11 Case and the respective heirs, executors, administrators, successors or assigns, if any, of any of the foregoing.

(9) **Free and Clear**. Except as otherwise provided in the Plan or in this Confirmation Order, from and after the Effective Date, the Reorganized Debtor shall be vested with all property of the Estates, free and clear of all Claims, liens, encumbrances, charges and other interests of creditors and equity security holders of the Debtor. From and after the Effective Date, the Reorganized Debtor may operate his business and assets and use, acquire or dispose of assets free of any restrictions imposed by the Bankruptcy Code, the

-17-

Bankruptcy Court or the U.S. Trustee (except for quarterly operating reports and fees associated therewith).

(10) **Administrative Claims**. On the Effective Date, all Allowed Administrative Claims, other than Administrative Claims of the Debtor's Professional, if any, shall be paid in full in Cash from the Debtor's earnings and accounts. Upon payment and satisfaction in full of all Administrative DIP Claims, all Liens and security interests granted to secure such obligations, whether in the Chapter 11 Case or otherwise, shall be terminated and of no further force or effect.

(11) **Implementation of the Plan**. The Debtor and the Reorganized Debtor shall be authorized to execute, deliver, file or record such documents, contracts, instruments, releases and other agreements, and take such other actions as may be necessary to effectuate, implement and further evidence the terms and conditions of the Plan. On the Effective Date, the Debtor is empowered to issue, execute, file and deliver or record such documents, contracts, instruments and other agreements contemplated by the Plan, in the name of, and on behalf of, the Reorganized Debtor.

(12) **Cancellation of Liens**. Except as otherwise provided in the Plan, upon the occurrence of the Effective Date, any Lien securing any Secured Claim shall be deemed released and the holder of such Secured Claim shall be authorized and directed to release any Collateral or other property of the Debtor (including any cash collateral) held by such holder, and to take such actions as may be requested by the Reorganized Debtor to evidence the release of such Lien, including the execution, delivery and filing or recording of such releases, as may be requested by the Reorganized Debtor.

(13) **Compromise of Controversies**. In consideration for the distributions and other benefits, including releases, provided under the Plan, the provisions of the Plan constitute a good faith compromise and settlement of all Claims and controversies resolved under the Plan, and the entry of this Confirmation Order constitutes approval of such compromise and settlement under Bankruptcy Rule 9019.

(14) **Assumption of Contracts and Leases**. The Debtor shall be deemed to have assumed his executory contract with the Mercantile Exchange, pursuant to section 365 of the Bankruptcy Code. Such contract and lease assumption is hereby approved as of the Effective Date pursuant to sections 365(b) and 1123(b) of the Bankruptcy Code, and all objections, if any, are overruled.

(15) **Conditions to Effective Date**. The Plan shall not become effective unless and until the conditions set forth in Article XVI of the Plan have been satisfied or waived pursuant to the terms of the Plan. In the event that one or more of the conditions specified in Article XVI of the Plan have not occurred on or before the time period set forth therein or otherwise been waived pursuant to the terms of the Plan, (a) this Confirmation Order shall be vacated, (b) no distributions under the Plan shall be made, (c) the Debtor and all holders of Claims against the Debtor shall be restored to the status quo ante as of the day immediately preceding the Confirmation Date as though the Confirmation Date had never occurred, and (d) all of the Debtor' obligations with respect to the Claims shall remain unaffected by the Plan, and nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtor or any other Person or to prejudice in any manner the rights of the Debtor or any Person in any further proceedings involving the Debtor, and the Plan shall be deemed withdrawn.

(16)   **Professional Compensation.** All Persons seeking awards by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Confirmation Date under sections 330, 331, 503(h)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code shall (a) file, on or before the date that is forty-five (45) days after the Effective Date, their respective applications for final allowances of compensation for services rendered and reimbursement of expenses incurred and (b) be paid in full, in Cash, in such amounts as are Allowed by the Bankruptcy Court, in accordance with the order relating to or Allowing any such Administrative Expense Claim. Notice of a hearing (the "Final Fee Hearing") on the Final Fee Applications shall be provided in accordance with the Bankruptcy Rules and Local Rules. The Reorganized Debtor is authorized to pay compensation for professional services rendered and reimbursement of expenses incurred after the Confirmation Date in the ordinary course and without the need for Bankruptcy Court approval.

(17)   **Objections to Final Fee Applications.** All objections to any Final Fee Applications shall be filed with the Court, together with proof of service thereof, and served upon the applicant and the Notice Parties, so as to be received no later than 4:00 p.m. prevailing Eastern Time on the date that is five (5) Business Days prior to the Final Fee Hearing.

(18)   **Post-Confirmation Administrative Expenses.** Administrative expenses incurred by the Debtor or the Reorganized Debtor after the Effective Date, including Claims for professionals' fees and expenses, shall not be subject to application and may be paid by the Debtor or the Reorganized Debtor, as the case may be, in the ordinary course of business and without further Bankruptcy Court approval.

(19)    **Discharge.** As of the Effective Date, the confirmation of the Plan shall (i) except as otherwise provided in the Plan, in exchange for and in complete satisfaction, discharge and release all Claims against or Interests in the Debtor of any nature whatsoever, known or unknown, including any interest accrued or expenses incurred thereon from and after the Commencement Date or against his estate or properties or interests in property, and (ii) except as provided otherwise in the Plan, upon the Effective Date, all Claims against and Interests in the Debtor shall be satisfied, discharged and released in full in exchange for the consideration provided under the Plan, and (ii) except as provided otherwise in the Plan, all entities shall be precluded from asserting against the Debtor, the Reorganized Debtor or properties or interests in property, any other Claims based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date.

(20)    **Payment of Statutory Fees.** All fees payable pursuant to section 1930 of title 28 of the United States Code, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid on the Effective Date.

(21)    **Compliance with Tax Requirements.** Each holder of an Allowed Claim that is to receive a distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding and other tax obligations, on account of such distribution.

(22)    **Reversal/Stay/Modification/Vacatur of Confirmation Order.** Except as otherwise provided in this Confirmation Order, if any or all of the provisions of this Confirmation Order are hereafter reversed, modified, vacated or stayed by subsequent order of this Court, or any other court, such reversal, stay, modification or vacatur shall not affect the

-21-

validity or enforceability of any act, obligation, indebtedness, liability, priority or lien incurred or undertaken by the Debtor or the Reorganized Debtor, as applicable, prior to the effective date of such reversal, stay, modification, or vacatur. Notwithstanding any such reversal, stay, modification or vacatur of this Confirmation Order, any such act or obligation incurred or undertaken pursuant to, or in reliance on, this Confirmation Order prior to the effective date of such reversal, stay, modification or vacatur shall be governed in all respects by the provisions of this Confirmation Order and the Plan or any amendments or modifications thereto.

(23) **Retention of Jurisdiction.** Notwithstanding the entry of this Confirmation Order or the occurrence of the Effective Date, pursuant to sections 105 and 1142 of the Bankruptcy Code, this Court, except as otherwise provided in the Plan or herein, shall retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Case to the fullest extent as is legally permissible, including, but not limited to, jurisdiction over the matters set forth in Article XVII of the Plan.

(24) **Modifications.** Without need for further order or authorization of the Court, the Debtor or the Reorganized Debtor is authorized and empowered to make any and all modifications to the Plan or any other document that is necessary to effectuate the Plan that do not materially modify the terms of such documents and are consistent with the Plan.

(25) **Provisions of Plan and Confirmation Order Nonseverable and Mutually Dependent.** The provisions of the Plan and this Confirmation Order, including the findings of fact and conclusions of law set forth herein, are nonseverable and mutually dependent.

-22-

(26) **Governing Law.** Except to the extent that the Bankruptcy Code or other federal law is applicable, the rights, duties and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Illinois without giving effect to the principles of conflict of laws.

(27) **Applicable Non-bankruptcy Law.** Pursuant to section 1123(a) and 1142(a) of the Bankruptcy Code, the provisions of this Confirmation Order, the Plan and related documents or any amendments or modifications thereto shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

(28) **Waiver of Filings.** Any requirement under section 521 of the Bankruptcy Code or Bankruptcy Rule 1007 obligating the Debtor to file any list, schedule or statement with the Court or the Office of the U.S. Trustee (except for monthly operating reports or any other post-confirmation reporting obligation to the U.S. Trustee) is hereby waived as to any such list, schedule or statement not filed as of the Confirmation Date.

(29) **Governmental Approvals Not Required.** This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules or regulations of any state or other governmental authority with respect to the implementation or consummation of the Plan and Disclosure Statement, any documents, instruments or agreements, and any amendments or modifications thereto and any other acts referred to in, or contemplated by, the Plan and the Disclosure Statement.

(30) **Notice of Confirmation Order.** In accordance with Bankruptcy Rules 2002 and 3020(c), as soon as reasonably practicable after the Effective Date, the Debtor shall serve notice of the entry of this Confirmation Order, substantially in the form annexed hereto as Exhibit C, to all parties who hold a Claim in this case, including the U.S. Trustee. Such notice is

-23-

hereby approved in all respects and shall be deemed good and sufficient notice of entry of this Confirmation Order.

(31)    **Substantial Consummation**. On the later of the Effective Date and the date on which the Debtor makes the initial payment to Class 1C and 1D Claimants and the first quarterly payment due and owing to Class 1C, 1D, 2A, 3A, and the first and final payment to Class 3B claimants, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127 of the Bankruptcy Code.

(32)    **Waiver of Stay**. The stay of this Confirmation Order provided by any Bankruptcy Rule (including Bankruptcy Rule 3020(e)), whether for ten (10) days or otherwise, is hereby waived, and this Confirmation Order shall be effective and enforceable immediately upon its entry by the Court.

(33)    **Inconsistency**. To the extent of any inconsistency between this Confirmation Order and the Plan, this Confirmation Order shall govern.

(34)    **No Waiver**. The failure to include specifically any particular provision of the Plan in this Confirmation Order will not diminish the effectiveness of such provision nor constitute a waiver thereof, it being the intent of this Court that the Plan is confirmed in its entirety and incorporated herein by this reference.

Dated: _____, 2009    **APR - 7 2009**

Hon. John H. Squires
United States Bankruptcy Judge

-24-

# Exhibit A
# Fifth Amended Plan of Reorganization

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re Joseph Carmen DiCaro | ) | **Chapter 11 Proceeding** |
| | ) | |
| **Debtor** | ) | **Case No. 08-32682** |
| | ) | |
| | ) | **Hon. John H. Squires** |
| | ) | |

## FIFTH AMENDED PLAN OF REORGANIZATION
## PROPOSED BY JOSEPH CARMEN DICARO

### Dated: April 6, 2009

### INTRODUCTION

Joseph Carmen DiCaro, the debtor and debtor in possession in this Chapter 11 case, (the "Debtor") proposes the following Fifth Amended Plan of Reorganization pursuant to §1121(a) of the Bankruptcy Code (this "Plan").

This Plan is the Debtor's proposal for the Debtor's payment of the Claims of his creditors as of the Petition Date.

The Debtor by this Plan solicits the acceptances of all creditors whose claims are Impaired. The Debtor believes that acceptance of this Plan would be in the best interest of the Debtor's creditors. THE DEBTOR URGES ALL CREDITORS TO ACCEPT THIS PLAN.

## I.    DEFINITIONS AND INTERPRETATIONS

The following terms shall have the meanings set forth in this Article I. Unless otherwise indicated, the singular shall include the plural and capitalized terms shall at all times refer to the terms as defined in this Article I. If the Debtor has not defined a term in this Plan, but that term is used in the Bankruptcy Code, then it shall have the meaning assigned to it in the Bankruptcy Code or in the decisions relating to the Bankruptcy Code.

A.    **Administrative Expense:**    shall mean any cost, Claim or expense of administration entitled to priority in accordance with the provisions of Sections 330, 503(b) and 507(a)(1) of the Bankruptcy Code, including without limitation, any actual and necessary expenses of preserving the Debtor's estate, any fees or charges assessed against or due from the Debtor's estate under 28 U.S.C. §1930, and all fees and expenses of Professional Persons incurred after the Confirmation Date but prior to the Effective Date, and (b) any amounts required to be paid to assume executory contracts or unexpired leases in accordance with Article VIII of this Plan.

B.    **Allowed:**    shall mean, with respect to any Claim, except as otherwise provided herein:

1. any Claim for which a proof of claim has been Filed with the Bankruptcy Court on or before the Bar Date:

    (a) as to which no objection has been made to its allowance by the Claims Objection Bar Date,

    (b) or as to which an objection was Filed and the Claim has been allowed by a Final Order;

2. any Claim that is deemed to be Allowed pursuant to:

    (a) any provision of this Plan,

    (b) in any stipulation of amount and nature of Claim executed prior to the Confirmation Date and approved by the Bankruptcy Court, or

    (c) in any stipulation with the Debtor of amount and nature of Claim executed on or after the Confirmation Date; and

3. any Claim that has been scheduled by the Debtor in its schedules of liabilities as other than disputed, contingent and unliquidated and as to which the Debtor or other party in interest has not Filed an objection by the Claims Objection Bar Date.

Unless otherwise specified by the Plan or by order of the Bankruptcy Court, Allowed Claims shall not include interest for the period from and after the Petition Date, nor shall they include any Claim that may be disallowed under Section 502(d) of the Bankruptcy Code.

C.    **Allowed Priority Tax Claim**:  shall mean that portion of an Allowed Claim entitled to priority under Section 507(a)(8) of the Bankruptcy Code.

D.    **Allowed Secured Claim**:  shall mean a Secured Claim to the extent that, pursuant to Section 506(a) of the Bankruptcy Code, such Claim is determined by a Final Order or provided in the Plan not to be an unsecured claim and (b) is an Allowed Claim.

E.    **Allowed Unsecured Claim**:  shall mean an Unsecured Claim to the extent that it is an Allowed Claim.

F.    **Assets**:  shall mean all tangible and intangible assets of every kind and nature of the Debtor and all proceeds thereof (including but not limited to cash proceeds), existing as of the Effective Date.

G.    **Avoidance Action**:  shall mean any actual or potential claim or cause of action arising under Chapter 5 of the Bankruptcy Code.

H.    **Ballot**: shall mean the form or forms that will be distributed along with the Disclosure Statement to holders of Claims in Classes that are Impaired under the Plan and entitled to vote, which the holders of Impaired Claims may use to vote to accept or reject the Plan.

I.     **Ballot Date**: shall mean the date set by the Bankruptcy Court as the last date for timely submission of a ballot accepting or rejecting the Plan.

J.     **Bankruptcy Code**: shall mean title 11 of the United States Code, as amended from time to time.

K.     **Bankruptcy Court**: shall mean the United States Bankruptcy Court for the Northern District of Illinois including the Hon. John H. Squires, the United States Bankruptcy Judge presiding in this case, or such other judge or Court that may have jurisdiction over this case. In the event of the filing an appeal, as used herein, the term shall also mean the United States District Court for the Northern District of Illinois, as the context dictates.

L.     **Bar Date**: shall mean the date set by the Bankruptcy Court as the last date for timely submission of a proof of claim on account of all Claims against the Debtor other than Administrative Claims.

M.     **Business Day**: shall mean any day other than a Saturday, Sunday or a legal holiday as defined in the Rules at Rule 9006(a).

N.     **Claim**: shall mean any right to payment from the Debtor that arose on or before the Confirmation Date, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or any right to an equitable remedy for breach of performance, if such breach gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

O.     **Claims Objection Bar Date**:     shall mean the deadline fixed by the Bankruptcy Court for the Debtor or any other entity to File an objection to the allowance of any Claim.

P.     **Class**: shall mean any one of the classes of Claims described in Article II of the Plan.

Q.     **Collateral**: shall mean property in which the Debtor has an interest that secures, in whole or in part, the payment of a Claim.

R.     **Confirmation**:     shall mean the entry of the Confirmation Order on the docket of the Bankruptcy Court.

S.     **Confirmation Date**: shall mean the date of entry of the Confirmation Order in accordance with the provisions of the Bankruptcy Code; provided, however, that if the Confirmation Order is stayed on motion pending appeal, then the Confirmation Date shall be the date of entry of the Final Order vacating such stay.

T.     **Confirmation Hearing**:     shall mean the hearing to confirm the Plan.

U.    **Confirmation Order:** shall mean the Order of the Bankruptcy Court (or District Court as the case may be) confirming this Plan pursuant to Section 1129 of the Bankruptcy Code and approving the transactions contemplated in this Plan.

V.    **Contested Claim:** shall mean any Claim against the Debtor (a) subject to a timely objection or request for estimation, or (b) that is otherwise disputed by the Debtor in accordance with applicable law, which objection, request for estimation or dispute has not been withdrawn or determined by a Final Order, or (c) that is not an Allowed Claim.

W.    **Creditor:** shall mean any Person having a Claim against the Debtor, including without limitation a Claim that arose on or before the Petition Date or a Claim against the Debtors' estates of any kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code.

X.    **Debtor:** shall mean Joseph Carmen DiCaro, the debtor in this case.

Y.    **Disallowed Claims:** shall mean a Claim to the extent that such Claim is disallowed by a Final Order or by written agreement of the holder thereof.

Z.    **Disclosure Statement:** shall mean the disclosure statement respecting the Plan, as approved by the Bankruptcy Court, together with all exhibits and supplements thereto, as amended, supplemented or modified, that is prepared and distributed in accordance with Sections 1125, 1126(b) and/or 1145 of the Bankruptcy Code and/or other applicable law.

AA.   **Disputed:** shall mean, with reference to any Claim against the Debtor, a Claim or any portion thereof, that is not an Allowed Claim including, but not limited to, Claims (1) (a) that the Debtor has not scheduled, or that the Debtor scheduled at zero or as contingent, unliquidated or disputed, (b) that are the subject of a proof of claim that differs in nature, amount or priority from the Debtor's schedules, or (c) as to which an objection has been interposed as of the deadline fixed by the Plan, as may be extended in accordance with the Plan and (2) the allowance or disallowance of which is not yet the subject of a Final Order.

BB.   **District Court:** shall mean the United States District Court for the Northern District of Illinois, Eastern Division including any United States District Judge presiding in this case or such other Court having jurisdiction over this case.

CC.   **§1111(b) Election:** shall mean a timely election, pursuant to Section 1111(b) of the Bankruptcy Code and Rule 3014 of the Rules, by the holder of a Claim secured by Collateral to have its entire Claim treated as a Secured Claim under the Plan notwithstanding Section 506(a) of the Bankruptcy Code.

DD.   **Effective Date:** shall mean the first Business Day which is ten (10) days (as calculated in accordance with Bankruptcy Rule 9006(a)) after the Confirmation Date, on which (a) the Confirmation Order is not stayed.

EE.   **Fee Application:** shall mean an application of a Professional Person under Sections 330 or 331 of the Code.

FF.    **File, Filed, or Filing**: shall mean file, filed or filing with the Clerk of the Bankruptcy Court.

GG.    **Final Order**: shall mean an order or judgment of the Bankruptcy Court which (a) has not been reversed, stayed, vacated, modified or amended, and as to which the time to appeal or seek review or rehearing has expired and as to which any right to appeal, reargue, petition for certiorari or rehearing has been waived in a manner satisfactory to the Debtor, as a result of which such order shall have become final in accordance with applicable law or (b) if an appeal, reargument, certiorari or rehearing has been sought, the order of the lower court has been affirmed by the higher court to which the order was appealed or from which the reargument or rehearing was sought or certiorari has been denied and time to take further appeal or to seek certiorari or further re-argument or rehearing has expired.

HH.    **Fund**: shall mean the total sum of monies to be paid out by the Debtor under the Plan, said amount to be $821,582.39.

II.    **Impaired**:    shall have the meaning set forth in Section 1124 of the Bankruptcy Code.

JJ.    **Person**:    shall mean a natural person, or any legal entity or organization including, without limitation, any corporation, partnership (general or limited), limited liability company, business trust, unincorporated organization or association, joint stock company, trust, association, governmental body (or any agency, instrumentality or political subdivision thereof), or any other form of legal entity.

KK.    **Petition Date**: shall mean the date on which the petition commencing this case under Chapter 11 was Filed, which was November 28, 2008.

LL.    **Plan**: shall mean this Fifth Amended Plan of Reorganization proposed by the Debtor either in its present form or as it may be amended or modified from time to time.

MM.    **Pre-Confirmation Rights of Action**: shall mean all rights, claims and causes of action, whether equitable or legal, of the estate against the Debtor or third persons (including the right to prosecute or compromise and settle such rights, claims and causes of action) existing before the Confirmation Date, including, without limitation, any Avoidance Action.

NN.    **Priority Tax Claim**: shall mean that a Claim asserting priority under Section 507(a)(8) of the Bankruptcy Code.

OO.    **Professional Fees**:    shall mean fees requested or to be requested under sections 328, 330(a), 503 and/or 1103 of the Bankruptcy Code for the compensation of a professional for services rendered or expenses incurred in this case on or prior to the effective date.

PP.    **Professional Persons**: shall mean all persons retained or to be compensated pursuant to §§326, 327, 328, 330, 503(b) and 1103 of the Bankruptcy Code.

QQ.    **Rules**: shall mean the Federal Rules of Bankruptcy Procedure recommended by the Judicial Conference of the United States, as prescribed by the Supreme Court of the United

States, effective on the Petition Date in accordance with the provisions of 11 U.S.C. §2075, as the same have been and shall in the future be amended from time to time.

RR. **Secured Claim:** shall mean a Claim of a Creditor, arising on or before the Petition Date that is purportedly secured by a lien on Collateral or subject to set off under §553 of the Bankruptcy Code, to the extent of the value of such holder's purported interest in the Debtor's interest in the property, or to the extent of the purported amount of the set-off, as applicable, provided, however, that if the Creditor is entitled to make and makes the §1111(b) Election, the Creditor's Claim shall be a Secured Claim in the full amount of the Creditor's Claim.

SS. **Subordinated Claim:** shall mean (a) a Claim subordinated for purposes of distribution to any Unsecured Claim in accordance with Sections 510(b) or 510(c) of the Bankruptcy Code, or (b) a Penalty Claim.

TT. **Tax Claim:** shall mean any Claim for taxes against the Debtor, including without limitation any interest and penalties due thereon, entitled to priority in payment pursuant to § 507(a)(8) of the Bankruptcy Code.

UU. **Undetermined Claim:** shall mean a Claim that is not an Allowed Claim or a Disallowed Claim and is (a) a Contested Claim, (b) a Claim arising from the rejection of an executory contract or unexpired lease pursuant to this Plan, (c) a claim that is unliquidated or contingent, (d) a Claim as to which, on or before the Effective Date, the Debtor has not made a determination whether or not to object or (e) an Administrative Expense.

VV. **Unimpaired:** shall mean any Claim that is not Impaired within the meaning of §1124 of the Bankruptcy Code

WW. **Unsecured Claim:** shall mean a Claim that is not a Secured Claim, a Priority Claim, a Tax Claim or a Subordinated Claim.

XX. **Unsecured Creditor:** shall mean any Creditor that is the holder of an Unsecured Claim.

## II.   CLASSIFICATION OF AMOUNTS OWING, CLAIMS AND INTEREST

A. All Claims shall be fixed and determined as of the Petition Date.

B. Classification. The Claims against the Debtor and the Equity Interests in the Debtor shall be classified in this Plan as follows:

1. Administrative Expenses

2. Class 1A – Secured Claim of Chase Home Mortgage

3. Class 1B – Secured Claim of Planet Toyota

4. Class 1C – Secured Tax Claim of the IDOR

5. Class 1D – Secured Tax Claim of the IRS

6. Class 2A – Priority Tax Claim of IDOR

7. Class 2B -- Priority Tax Claim of IRS

8. Class 3A – General Unsecured Claims

9. Class 3B -- Convenience Class

10. Equity Interests

C. Resolution of Disputes:  Disputes regarding the proper classification of Claims shall be resolved pursuant to the procedures established in the Bankruptcy Code, the Rules and other applicable laws. The Bankruptcy Court shall have exclusive jurisdiction over disputes concerning the classification of Claims. Resolution of any such disputes shall not be a condition precedent to Confirmation or Consummation of the Plan

D. A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class.

E. Distributions on Disputed Claims: Payments and distributions to each holder of a Disputed Claim that ultimately becomes an Allowed Claim shall be made in accordance with the provisions of this Plan with respect to the Class of creditors to which the respective holder of an Allowed Claim belongs. Such payments and distributions shall be made as soon as practicable after the date that the order or judgment allowing such Claim is a Final Order.

## III.   TREATMENT OF UNIMPAIRED AND UNCLASSIFIED CLAIMS

The following Class is unimpaired by the Plan in accordance with §1124 of the Bankruptcy Code or is not required to be classified in this Fifth Amended Plan of Reorganization under the provisions of the Bankruptcy Code.

A. **Administrative Expenses**:  These claimants represent claims arising post-petition. Any Administrative Expense that is an Allowed Claim shall be paid by the Reorganized Debtor, in full, in cash, or as otherwise agreed, through a one time payment from the Fund under this Plan beginning on the first day of the first whole month following confirmation of this Plan; provided, however, that an Administrative Expense representing a liability incurred in the ordinary course of business by the Debtor shall be paid by the Debtor in accordance with the terms and conditions of any agreements relating thereto. Payment of Professional Fees shall be subject to the provisions of Sections 330(a) and 331 of the Bankruptcy Code or as otherwise provided by the Plan. United States Trustee and other bankruptcy fees shall be paid in full on or before the Effective Date or as they come due thereafter.  The source of payment for these amounts will be the Debtor's income. The Debtor expects Administrative Claims will be approximately $30,000 as of the Effective Date.

B. **Secured Claims:**

1. **Class 1A – Secured Claim of Chase Home Mortgage**: Chase Home Mortgage holds the first priority perfected lien on the Debtor's personal residence. The Debtor owes $575,925.27 to Chase Home Mortgage. The Debtor has continued to make regular payments to Chase Home Mortgage. Chase Home Mortgage's Claim is a Secured Claim based on its mortgage lien on the Debtor's personal residence. The Debtor's personal residence is valued at $600,000. The Debtor will pay the claim of Chase Home Mortgage in equal monthly installments of $4,815.05 per month in accordance with the terms of the underlying loan documents.

2. **Class 1B – Secured Claim of Planet Toyota**: Planet Toyota holds the first priority perfected lien on the Debtor's Toyota automobile. The Debtor owes $6,560.00 to Planet Toyota. The Debtor has continued to make regular payments to Planet Toyota. Planet Toyota's Claim is a Secured Claim based on its lien on the Debtor's automobile. The Debtor will pay Planet Toyota's claim in equal monthly installments of $656 per month in accordance with the terms of the underlying loan documents.

## IV.   TREATMENT OF IMPAIRED CLAIMS AND EQUITY INTERESTS

The Claims in the Classes listed below are Impaired by the Plan:

A. **Secured Claims:**

1. **Class 1C – IDOR Secured Tax Claim**: The Class 1C Claimant includes a $166,369.57 portion of the Illinois Department of Revenue's Allowed Claim determined to be an Allowed Secured Claim as of the Effective Date. The IDOR shall receive the present value of its Secured Claim as of Confirmation with interest as provided for under 26 U.S.C. §§6621 and 6622 on the date the Plan is confirmed on the unpaid balance accruing on those claims from that date until paid in full. The Debtor shall satisfy the IDOR's Secured Claim including interest by (a) delivering an initial payment of $102,000 on the Effective Date; and (b) equal quarterly cash payments of $3,657.50 between the date of confirmation and the fifth anniversary of the date of confirmation. The Debtor shall remit the initial payment on the Effective Date of as soon thereafter as is practical. The Debtor shall remit the first quarterly payment on the first day of the calendar quarter following the entry of the order of confirmation and quarterly payments of $3,657.50 on the first day of each of the succeeding calendar quarter until the unpaid balance of the IDOR's Secured Claim is paid in full. Regardless of any language herein to the contrary, so long as the IDOR holds an Allowed Secured Claim, which has not been paid in full in accordance with the terms of the Plan, including interest as provided for under 26 U.S.C. §6621 and §6622 on the date the Plan is confirmed on the unpaid balance accruing on that claim from that date, the IDOR shall retain the tax lien securing its Secured Claim and that statutory authority granted to it for the enforcement of such lien.

2. **Class 1D – IRS Secured Tax Claim**: The Class 1D Claimant includes a $193,437.61 portion of the IRS' Allowed Claim determined to be an Allowed Secured Claim as of the Effective Date. The IRS shall receive the present value of the Secured Claim determined by the Debtor after consultation with the IRS as of Confirmation with interest as provided for

under 26 U.S.C. §§6621 and 6622 on the date the Plan is confirmed on the unpaid balance accruing on those claims from that date until paid in full. The Debtor shall satisfy the IRS' Secured Claim including interest by (a) delivering and initial payment of $75,000.00 on the Effective Date; and (b) equal quarterly cash payments of $6,729.67 between the date of confirmation and the fifth anniversary of the date of confirmation. The Debtor shall remit the initial payment on the Effective Date of as soon thereafter as is practical. The Debtor shall remit the first quarterly payment on the first day of the calendar quarter following the entry of the order of confirmation and quarterly payments of $6,729.67 on the first day of each of the succeeding calendar quarter until the unpaid balance of the IRS' Secured Claim is paid in full. Regardless of any language herein to the contrary, so long as the IRS holds an Allowed Secured Claim, which has not been paid in full in accordance with the terms of the Plan, including interest as provided for under 26 U.S.C. §6621 and §6622 on the date the Plan is confirmed on the unpaid balance accruing on that claim from that date, the IRS shall retain the tax lien securing its Secured Claim and that statutory authority granted to it for the enforcement of such lien.

3. **There are no other secured claims**. Any party asserting a security interest in any of the Debtor's assets shall be subject to having that lien discharged pursuant to this Plan.

B. **Priority Tax Claims**

1. **Class 2A – IDOR Priority Tax Claim**: There is one Class 2A Allowed Priority Tax Claim having Priority Unsecured Status. The Illinois Department of Revenue holds that Claim due to unpaid income taxes accruing during the 2005 tax year. The Debtor seeks to pay the Illinois Department of Revenue's $35,918.30 Claim by delivering an initial payment within thirty (30) days of the Effective Date and equal payments on the first Business Day of each calendar quarter thereafter. The Illinois Department of Revenue's Claim shall accrue interest at the statutory interest rate, which is currently 5% per annum, and be paid through equal quarterly payments under this Plan until the Class 2A Claim is paid in full, but in no event will said payments continue beyond 60 months following the Effective Date. Regardless of any language herein to the contrary, so long as the IDOR holds an Allowed Priority Claim, which has not been paid in full in accordance with the terms of the Plan, including interest as provided for under 26 U.S.C. §6621 and §6622 on the date the Plan is confirmed on the unpaid balance accruing on that claim from that date, the IRS shall retain the tax lien securing its Secured Claim and that statutory authority granted to it for the enforcement of such lien.

The Illinois Department of Revenue claim arose during the period in which the Debtor was involved in a divorce proceeding. The Debtor received poor advice from his divorce counsel that encouraged the Debtor to not pay his income tax liability.

Claimant: The Illinois Department of Revenue

| | |
|---|---|
| Security: | None |
| Amount Allowed: | $35,918.30 |
| Secured Portion: | Unsecured |
| Distribution: | 100% |
| Status: | Impaired |

2. **Class 2B – IRS Priority Tax Claim**: There is one Class 2B Allowed Priority Tax Claim having Priority Unsecured Status. The IRS holds that Claim due to unpaid interest on income taxes accruing during the 2006 tax year. The Debtor seeks to pay the IRS' $1,539.23 Class 2B Claim by delivering an initial payment within thirty (30) days of the Effective Date and equal payments on the first Business Day of each calendar quarter thereafter. The IRS' Claim shall accrue interest at the statutory interest rate, which is currently 5% per annum, and be paid through equal quarterly payments under this Plan until the Class 2A Claim is paid in full, but in no event will said payments continue beyond 60 months following the Effective Date. Regardless of any language herein to the contrary, so long as the IRS holds an Allowed Priority Claim, which has not been paid in full in accordance with the terms of the Plan, including interest as provided for under 26 U.S.C. §6621 and §6622 on the date the Plan is confirmed on the unpaid balance accruing on that claim from that date, the IRS shall retain the tax lien securing its Secured Claim and that statutory authority granted to it for the enforcement of such lien.

The IRS claim arose during the period in which the Debtor was involved in a divorce proceeding. The Debtor received poor advice from his divorce counsel that encouraged the Debtor to not pay his income tax liability.

Claimant: The Internal Revenue Service

| | |
|---|---|
| Security: | None |
| Amount Allowed: | $1,539.23 |
| Secured Portion: | Unsecured |
| Distribution: | 100% |
| Status: | Impaired |

C. **Unsecured Claims**

1. The Class 3A and Class 3B Claimants together include all of the Allowed Claims held by any Unsecured Creditor, and all disputed, contingent, or unliquidated Allowed Unsecured Claims allowed as of the Effective Date. There are fifteen (15) Unsecured Creditors. No Unsecured Claim shall accrue interest after the Petition Date. Generally, Class 3A is composed of tax debts and normal consumer debts owing by the Debtor. Class 3B is composed of small consumer debts. Claims for more than $900 will be in Class 3A and Claims for a lesser amount will be in the Class 3B convenience class. The Debtor will 15% of the Class 3A claims over five years. The Debtor will make a single payment on the Class 3B claims of 25% to avoid the necessity of writing very small checks and requiring those creditors to wait for a substantial period time for a minimal payment.

2. **Class 3A**: In full and final satisfaction of the Class 3A Claims, the holder of each Class 3A Claim shall be paid in equal quarterly payments over a five year period (20 quarters). This will allow them to receive $1/20^{th}$ of the payment each quarter. Because the Debtor's business causes him to receive erratic payment streams, monthly payments are impractical. The Debtor owes these debts primarily due to poor legal advice as to taxes and normal consumer practices. Class 3A includes all unsecured claims that are both undisputed and equal to or greater than $900.

There are seven (7) claimants in Class 3A. The total to be paid to Class 3A Claims is $781,936.83. This is a payment of fifteen cents on the dollar (15%). The first payment will be made on the first day of the calendar quarter following the Effective Date of the Plan. The remaining payments will be made on or before the first day of each calendar quarter thereafter.

**Class 3A Claimants:**

| Claimant | Amount of Claim | Amount of Total Distribution |
|---|---|---|
| Capital One | $2,611.66 | $391.75 |
| Chase | 9,200.00 | $1,380.00 |
| Citibank | $8,600.00 | $1,290.00 |
| Daniel Toner & Associates | $10,935.00 | $1,640.25 |
| Illinois Department of Revenue | $4,203.66 | $630.55 |
| Internal Revenue Service | $737,977.69 | $110,696.65 |
| Roundup Funding (Assignee of Chase Bank Credit Card) | $8,408.82 | $1,261.32 |

| | |
|---|---|
| Security: | None |
| Amount Allowed: | $781,936.83 |
| Pro Rata Distribution: | 15% |
| Secured Portion: | Unsecured |
| Status: | Impaired |

3. Class 3B Unsecured Claims - Class 3B is a convenience class that includes all unsecured claims that are both undisputed and less than $900. Each Class 3B claimant will be paid within 30 days of the Effective Date at 25%. There are eight (8) claimants in Class 3B totaling $2,678.02. The total to be paid to Class 3B Claims is $669.51, which sum shall be paid Pro Rata to all Holders of Class 3B Unsecured Claims that are Allowed. These claimants will receive payment of 25% of the Allowed amount claimed within thirty (30) days of the Effective Date. There are eight (8) claimants in this Class.

**Class 3B Claimants:**

| Claimant | Amount of Claim | Amount of Total Distribution |
|---|---|---|
| Advocate Good Samaritan Hospital | $407.06 | $101.77 |
| AT&T | $384.51 | $96.13 |

| | | |
|---|---|---|
| AT&T Home | $161.72 | $40.43 |
| Athletico | $438.00 | $109.50 |
| ComEd | $800.00 | $200.00 |
| NICOR | $98.00 | $24.50 |
| Quest Diagnostics | $98.73 | $24.68 |
| U.S. Cellular | $290.00 | $72.50 |

| | |
|---|---|
| Security: | None |
| Amount Allowed: | $2,678.02 |
| Pro Rata Distribution: | 25% |
| Secured Portion: | Unsecured |
| Status: | Impaired |

Unless otherwise specifically provided in this Plan, each Creditor waives:

      (a) interest accruing after the Petition Date;
      (b) penalties accruing after the Petition Date;
      (c) the right to accelerate payment unless the Debtor defaults in its payments under this Plan after the Effective Date; and
      (d) contractual attorney's fees accruing after the Petition Date.

      D. **Equity Interests**. The Debtor is the holder of an Interest as a result of any equity he has in Estate assets. No distributions shall be made on account of the Debtor's Interest.

## V.    CLAIMS RESOLUTION

      A. **Bar Date for Filing of Administrative Expense Claims Other Than Claims for Professional Fees Earned in This Case**: The Debtor will File a motion seeking a determination of the date by which Claims must be Filed. Each Creditor will receive notice of that motion and the bar date.

      B. **Bar Date for Filing of Claims for Professional Fees Earned in This Case**: Any Professional Person asserting a Claim for pre-confirmation services and expenses shall File a Fee Application not later than forty-five days after the Effective Date.

      C. **Resolution of Undetermined Claims**: To the extent that the Debtor seeks to dispute or adjudicate the amount of any Claim the Debtor will File any objection or other pleading (a) with regard to any governmental claim thirty (30) days after such claim is filed, and with regard to any other claim within thirty (30) days of the Effective Date.

D. **Distributions on Disputed Claims**: Payments and distributions to each holder of a Disputed Claim that ultimately becomes an Allowed Claim shall be made in accordance with the provisions of this Plan with respect to the Class of creditors to which the respective holder of an Allowed Claim belongs. Such payments and distributions shall be made as soon as practicable after the date that the order or judgment allowing such Claim is a Final Order.

## VI.    LITIGATION

A. **No Waiver**.      Unless a Claim or cause of action against a Person is expressly waived, relinquished, released, compromised or settled by the Debtor or its estate, the Debtor and its estate expressly reserve such Claim or cause of action for later adjudication by the Debtor or its estate, including, but not limited to, Claims and causes of action not specifically identified or which the Debtor may be presently unaware or which may arise or exist by reason of additional facts or circumstances unknown to the Debtor at this time or facts or circumstances that may change or be different from those which the Debtor now believes to exist.

## VII.   DISTRIBUTION OF FUNDS

Means of Distribution:  The Debtor shall be responsible for making all distributions in accordance with the terms of the Plan.

## VIII.  EXECUTORY CONTRACTS AND UNEXPIRED LEASES

The Debtor is a party to one executory contract.  It is a lease of a seat on the Chicago Mercantile Exchange.  The Debtor has the right, subject to Court approval, to assume or reject any executory contracts and unexpired leases entered into before the Petition Date. Any damages resulting from a rejection are treated as a general unsecured claim and is included in the appropriate Class to the extent such claim is an Allowed Claim. Debtor will assume his lease with the Chicago Mercantile Exchange.  Any other executory contracts are deemed rejected as of the Effective Date.  All Claims arising from the rejection of executory contracts or unexpired leases under this Plan must be Filed within twenty (20) days of the Effective Date.

## IX.    INJUNCTION.

**Upon confirmation, except to the extent that payment is provided for in the Plan, the Debtor shall be discharged of all dischargeable debts to the maximum extent allowed under Sections 1141 and 523 and the Debtor shall be protected from post-confirmation actions by creditors to the full extent provided for in Section 524.**

## X.     IMPLEMENTATION AND FUNDING OF THE CASE

A. **Funding Source**.  The Debtor will retain all of his assets and will be obligated to make the payments required under the Plan. The Debtor will obtain funds to pay his obligations under the Plan from income generated from his trading of commodities.

B. **Vesting of Assets**. Pursuant to the provisions of sections 1141(b) and 1141(c) of the Bankruptcy Code, and consistent with the terms hereof, all of the Assets and effects of the Debtor including, without limitation, all assets, interests, property or rights transferred or

assigned to the respective Debtor, as reorganized, and shall vest in the Debtor, as reorganized, on the Effective Date free and clear of all Claims, Liens, encumbrances, charges and other interests of the holders of Claims and Equity Interests, except as otherwise provided in this Plan.

C. All assets of the Debtor shall remain assets of the Debtor, free and clear of all liens, Claims, encumbrances and interests, except those that are expressly created or preserved under the terms of this Plan. Included in those assets shall be all personal property and general intangibles.

D. **Distributions.** In order to receive a distribution under this Plan each and every Creditor who elects to participate in the distributions provided for under this Plan warrants that it is authorized to accept, in consideration of its Claim against the Debtor, the distributions for which this Plan provides and that there are no outstanding commitments, agreements, or understandings, express or implied, that may or can in any way defeat or modify the rights conveyed or obligations undertaken by it under this Plan.

## XI.   GENERAL PROVISIONS

A. **Extension of Payment Dates**:  If any installment payment under this Plan falls due on a Saturday, Sunday or a Legal Holiday, then such due date shall be extended to the next following Business Day.

B. **Transfer of Claims**:  In the event that the holder of any Claim shall transfer such Claim, it shall immediately advise the Debtor in writing of such transfer. The Debtor shall be entitled to assume that each Creditor has not transferred its Claim unless and until the Debtor has received written notice to the contrary. Each transferee of a Claim shall take such Claim subject to the provisions of this Plan and to any request made, waiver or consent given or other action taken hereunder and, except as otherwise expressly provided in such notice, the Debtor shall be entitled to assume conclusively that the transferee named in such notice shall thereafter be vested with all rights and powers under this Plan of the transferor.

C. **Captions**:  Captions used in this Plan are for convenience only and shall not affect the construction of this Plan.

D. **Severability**:  Should any provision in this Plan be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

E. **Successors and Assigns**:  The rights and obligations of any person named or referred to in this Plan shall be binding upon, and shall inure to the benefit of, the successors or assigns of such person.

F. **Right to Take Action**:   After the Effective Date, the Debtor shall have the right to take any and all actions they deems necessary or appropriate to litigate, compromise or settle any litigation claim, subject to Court Approval.

G. **Returned Distributions and Uncashed Checks.**   If any distribution is returned to the Debtor as undeliverable, no further distributions shall be made to such holder unless and

until the Debtor is notified in writing of such holder's then current address. Checks issued by the Debtor on account of Allowed Claims that are not returned as undeliverable, but are not negotiated within sixty (60) days from and after the date of issuance thereof shall be null and void. Any holder of an Allowed Claim that does not assert its rights pursuant to the Plan to receive a distribution within ninety (90) days from and after the date (a) such distribution is returned as undeliverable, or (b) of the issuance of a check that has not been returned as undeliverable, but is null and void because it was not timely negotiated, shall have such holder's Claim for such distribution discharged and shall be forever barred from asserting any such Claim against the estate, the Debtor or its assets. In the event that there is more than one distribution under the Plan, any creditor whose funds escheat shall be eliminated from any future distributions. Any entities ultimately receiving undeliverable cash, voided checks or unclaimed distributions shall not be entitled to interest or other accruals of any kind. Nothing contained in the Plan shall require the Debtor to attempt to locate any holder of an Allowed Claim or an Allowed Interest. Any undeliverable and unclaimed distributions and distributions not made shall be the Debtor's property.

H. **Set-Offs.** Pursuant to § 553 of the Bankruptcy Code or applicable non-bankruptcy law, the Debtor may set-off the distributions to be made pursuant to the Plan against any Allowed Claim; provided however, that neither the failure to effect a set-off nor the allowance of any Claim shall constitute a waiver or release of such Claims, right or cause of action.

I. **Distributions to Contested Claims.** No distribution shall be required to be made with respect to any portion of a Contested Claim pending the resolution thereof in the manner prescribed herein.

J. **Notices.** Until further notice is given by parties to the terms hereof, all notices to be given under the Plan shall be sent by First Class Mail, postage prepaid, addressed to:

Debtor:

Joseph Carmen DiCaro
1305 Castlewood Ct
Lemont, IL 60439

With a copy to:

Gregory J. Jordan
Apostol, Kowal & Jordan, Ltd.
200 South Wacker Drive, 32nd Floor
Chicago, Illinois 60606
Facsimile (312) 854-7181

Until further notice given pursuant to the terms hereof, all notices to be given hereunder shall be given by First Class Mail to all effected parties and all persons on the service list in the Debtor's bankruptcy case, not less than five (5) Business Days prior to the date the action so noticed is to occur.

## XII.   RETENTION AND ENFORCEMENT OF CLAIMS

Pursuant to §1123(b)(3) of the Bankruptcy Code and subject to the terms and conditions contained herein, the Debtor shall retain for the benefit of the holders of claims and may enforce any and all Claims of the Debtor including preference and other avoidance claims available under the Bankruptcy Code, if any.

## XIII.   MODIFICATION OF THIS PLAN

A. **Pre-Confirmation Modification**:   Modifications of this Plan may be proposed in writing by the Debtor at any time before the Confirmation Date, provided that such Plan, as modified, meets the requirements of Sections 1122 and 1123 of the Bankruptcy Code, and the Debtor shall have complied with §1125 of the Bankruptcy Code. Should any creditor make a proper election under §1111(b), the Debtor reserves the right to modify their plan as necessary to implement the requirement of Sections 1129(a)(7)(B) and 1129(b)(2)(A)(i) of the Bankruptcy Code to conform the terms of this Plan to the particular value of such claim.

B. **Post-Confirmation Modification**:   This Plan may be modified at any time after the Confirmation Date and before its substantial consummation, provided that such Plan, as modified, meets the requirements of Sections 1122 and 1123 of the Bankruptcy Code, and the Bankruptcy Court, after notice and a hearing, confirms such Plan, as modified, under §1129 of the Bankruptcy Code. For the purpose of modification of this Plan, substantial consummation shall be deemed to occur on the later of the date (1) when the confirmation order becomes final, or (2) the dates set forth in Article XVI of this Plan entitled Closing the Estate.

C. **Voting on the Plan.**   As a member of an Impaired Class, each holder of an Allowed Claim in Classes 1C, 1D, 2A, 2B, 3A and 3B are entitled to vote to accept or reject the Plan. An impaired Class of holders of Claims shall have accepted the Plan if the Plan is accepted by at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims of such Class that have voted to accept or reject the Plan. A Class of holders of Claims shall be deemed to accept the Plan in the event that no holder of a Claim within that Class submits a ballot by the deadline for doing so. All Claims shall be allowed for voting purposes only unless objected to before the hearing on Confirmation of the Plan.

D. **Presumed Acceptance of the Plan.**   Class 1A and 1B are unimpaired under the Plan and, therefore, the Holders of Claims in these Classes are presumed to have accepted the Plan, and solicitation of acceptances with respect to each such Class from the holders of claims of such Class is not required, pursuant to § 1126(f) of the Bankruptcy Code.

E. **Presumed Rejection of the Plan.**   The Debtor as the Holder of an Interest is deemed not to have accepted the Plan pursuant to § 1126(g) of the Bankruptcy Code.

F. **Non-Consensual Confirmation.**   In the event that any impaired Class of Claims shall fail to accept the Plan in accordance with § 1129(a) of the Bankruptcy Code, the Debtor reserves the right to request that the Bankruptcy Court confirm the Plan in accordance with § 1129(b) of the Bankruptcy Code or amend the Plan.

G. **Voting on Modification:**   A holder of a Claim or interest that has accepted or rejected this Plan shall be deemed to have accepted or rejected, as the case may be, such Plan as

modified, unless, within the time specified by the Bankruptcy Court, such holder changes its previous acceptance or rejection.

## XIV.   INVALIDATION OF LIENS AND DISCHARGE

All liens securing Claims which are not allowed pursuant to the provisions of this Plan and Sections 502 and 506 of the Bankruptcy Code shall be invalidated and deemed null and void and of no further force and effect. The provisions of this Plan, as confirmed, shall bind all Creditors and parties in interest, whether or not they accept this Plan and shall discharge the Debtor from all Claims that arose before the Confirmation Date. The distributions provided under this Plan shall be in exchange for and in complete satisfaction, discharge and release of all Claims against any of the Debtor's assets or the Property, including claims arising after the Petition Date and before the Confirmation Date. Unless otherwise specifically provided to the contrary herein or in the Confirmation Order, on and after the Confirmation Date, all holders of Claims shall be precluded from asserting any Claim against the Debtor or their assets.

## XV.   ACCEPTANCE OR REJECTION OF PLAN; EFFECT OF REJECTION BY CLASSES OF IMPAIRED CLAIMS OR EQUITY INTERESTS

A. **Reservation of §1129(b) Rights.** In the event that one or more Impaired Classes shall have failed to accept the Plan by the requisite majorities in accordance with §1126(c) and (d) of the Bankruptcy Code, the Debtor shall request that the Bankruptcy Court confirm the Plan in accordance with §1129(b) of the Bankruptcy Code against such rejecting Class or Classes.

B. **§1129(a)(12) Compliance.** All fees payable under 28 U.S.C. §1930, as determined by the Bankruptcy Court at the hearing on confirmation of the Plan, either will have been paid or will be paid on the Effective Date as an Administrative Expense Claim.

C. **Deemed Satisfaction of §1129(a)(13) of the Bankruptcy Code.** Prior to the commencement of the Case, the Debtor do not have a plan or plans providing for retiree benefits, as that term is defined in §1144 of the Code. Consequently, the confirmation requirements contained in §1129(a)(13) of the Bankruptcy Code are inapplicable to the Plan, and the Plan shall be deemed to have satisfied such requirements.

## XVI.   CLOSING THE ESTATE

For purposes of §1127(b) and for the closing of the estate, the following shall be conditions precedent to the substantial consummation of the Plan:

A. The Confirmation Order shall have become a Final Order or such requirement shall have been waived in writing by the Debtor; and

B. The date on which the Debtor payments makes the initial payment to Class 1C and 1D Claimants and the first quarterly payment due under this Planand owing to Class 1C, 1D, 2A, 3A and the first and final payment to Class 3B Claimants.

## XVII. RETENTION OF JURISDICTION

A. Notwithstanding confirmation of this Plan, the Bankruptcy Court shall retain jurisdiction for the following purposes:

1. Determination of the allowance of Claims and interests upon objection to such Claims by the Debtor, or by any other party in interest.

2. Determination of requests for payment to professional persons and Claims entitled to priority under Sections 503 and 507 of the Bankruptcy Code, including compensation of parties entitled thereto.

3. Implementation of the provisions of this Plan and entry of orders in aid of confirmation of this Plan, including, without limitation, appropriate orders to protect the Debtor from Creditor action.

4. Modification of this Plan pursuant to §1127 of the Bankruptcy Code.

5. Adjudication of any causes of action, including Avoidance Actions brought by the Debtor.

6. Determination of any issues raised by papers Filed with the Bankruptcy Court on or before the Confirmation Date.

7. Entry of a final decree closing the Debtor's case.

## XVIII. OTHER MATERIALS

The attention of holders of Claims is directed to the Disclosure Statement.

**JOSEPH CARMEN DICARO**

By:___/s/ Joseph Carmen DiCaro_____
      Joseph Carmen DiCaro, Debtor

By:___/s/ Gregory J. Jordan_____
      One of His Attorneys

Gregory J. Jordan (ARDC# 6205510)
Louis Apostol (ARDC# 3125952)
Vernon Kowal (ARDC #6194791)
Apostol, Kowal & Jordan, Ltd.
200 South Wacker Drive, 32nd Floor
Chicago, Illinois 60606
(312) 854-7181 (Direct)
(312) 276-9285 (Facsimile)

# Exhibit B

# Voting Certification

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re Joseph Carmen DiCaro | ) | **Chapter 11 Proceeding** |
| | ) | |
| **Debtor** | ) | **Case No. 08-32682** |
| | ) | |
| | ) | **Hon. John H. Squires** |
| | ) | |

**AFFIDAVIT OF GREGORY J. JORDAN REGARDING SOLICITATION
AND TABULATION OF VOTES IN CONNECTION WITH THE THIRD
AMENDED PLAN OF REORGANIZATION PROPOSED BY
JOSEPH CARMEN DICARO DATED MARCH 20, 2009**

I, Gregory J. Jordan, state as follows:

1.     I am over eighteen years of age and not a party to the above-captioned action. I believe the statements contained herein are true based on my personal knowledge. I am an attorney and shareholder of Apostol, Kowal & Jordan, Ltd. ("AKJ") and my business address is 200 South Wacker Drive, 32nd Floor, Chicago, Illinois 60606.

2.     Unless otherwise defined herein, terms capitalized in this declaration have the same meaning as given in the Third Amended Plan of Reorganization Proposed by Joseph Carmen DiCaro, dated March 20, 2009 (the "Plan") [Docket #49] and the Order (A) Scheduling Hearing to Approve Adequacy of Disclosure Statement and to Confirm Plan of Reorganization; (B) Establishing Objection Deadline; (C) Approving Form of Ballots, Voting Deadline and Solicitation Procedures; and (D) Approving Form of Notice (the "Solicitation Procedures Order") [Docket #36].

3.     The Solicitation Procedures Orders served as AKJ's guide for solicitation and the tabulation of votes to accept or reject the Plan.

4.     Pursuant to the Solicitation Procedures Order, the Voting Deadline for all creditors was established as March 23, 2009 at 4:00 p.m. prevailing Central time.  All timely received

Ballots were reviewed in accordance the procedures approved in the Solicitation Procedures Order.

5. Due, adequate and sufficient notice of the Disclosure Statement and Plan, approval of the Disclosure Statement, approval of the Solicitation Procedures motion and of the Confirmation Hearing, along with the Voting Deadline and the Plan confirmation objection deadline, has been transmitted to the voting Classes in accordance with the procedures set forth in the Solicitation Procedures Orders.

6. Votes for acceptance or rejection of the Plan were solicited in good faith and in compliance with sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, the Disclosure Statement, the Solicitations Procedures Orders, all other applicable provisions of the Bankruptcy Code, and all other rules, laws, and regulations.

7. All procedures used to distribute Ballots to the applicable holders of Claims and to tabulate the Ballots were fair and conducted in accordance with the Solicitation Procedures Orders, the Bankruptcy Code, the Bankruptcy Rules, the local rules applicable to the Bankruptcy Court for the Northern District of Illinois, Eastern Division, and all other applicable rules, laws, and regulations.

8. Below is a summary of the impaired Classes entitled to vote and the voting tabulation.

| IMPAIRED CLASS AND DESCRIPTION | Accept | | | Reject | | Class Accepting | Class Rejecting |
|---|---|---|---|---|---|---|---|
| | Votes Received | Votes Counted | Amount | Votes Counted | Amount | | |
| Class 1C - IDOR Secured Tax Claim | 1 | 1 | $166,369.57 | 0 | 0 | Yes | No |
| Class 1D – IRS Secured Tax Claim | 0 | 0 | 0 | 0 | 0 | N/A | N/A |
| Class 2A – IDOR Priority Tax Claim | 1 | 1 | $35,918.30 | 0 | | Yes | No |

2-

| Class 2B — IRS Priority Tax Claim | 0 | 0 | $0.00 | 0 | 0 | N/A | N/A |
|---|---|---|---|---|---|---|---|
| Class 3A — General Unsecured Claims | 3 | 2 | $15,138.66 | 1 | $8,408.8 2 | No | Yes |
| Class 3B — Convenience Class Claims | 1 | 1 | $800.00 | 0 | 0 | Yes | No |
| Plan Accepted | Yes ● | | No 0 | | | | |

9.      Attached hereto as Exhibit A is a tabulation report that provides both summary and detail of all timely received ballots, Exhibit A also includes disclosure of ballots not counted and the reason(s) therefore.

10.     I certify that all Ballots were counted for the Classes for which those Ballots were filed. The Ballots filed and counted are attached hereto as Exhibit B.

1.      The Plan has received sufficient acceptance to be confirmed.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

**Further Affiant Saith Naught.**

Date: March 24, 2009                        _____/s/ Gregory J. Jordan_____
                                                           Gregory J. Jordan

**EXHIBIT A**

**BALLOT TABULATION REPORT SUMMARY**

| Class | Accept | Reject | Total Counted | Total Excluded | Total Received | Amount |
|-------|--------|--------|---------------|----------------|----------------|--------|
| Class 1C - IDOR Secured Tax Claim | 1 | 0 | 1 | 0 | 1 | $166,369.57 |
| Class 1D – IRS Secured Tax Claim | 0 | 0 | 0 | 0 | 0 | $0 |
| Class 2A – IDOR Priority Tax Claim | 1 | 0 | 1 | 0 | 1 | $35,918.30 |
| Class 2B – IRS Priority Tax Claim | 0 | 0 | 0 | 0 | 0 | $0 |
| Class 3A – General Unsecured Claims | 2 | 1 | 3 | 0 | 3 | $23,547.48 |
| Class 3B – Convenience Class Claims | 1 | 0 | 1 | 0 | 1 | $800.00 |

| Class | Creditor | Description |
|-------|----------|-------------|
| Class 1C - IDOR Secured Tax Claim | Illinois Department of Revenue | Vote $166,369.57 in Favor |
| Class 2A – IDOR Priority Tax Claim | Illinois Department of Revenue | Vote $35,918.30 in Favor |
| Class 3A – General Unsecured Claims | Illinois Department of Revenue | Vote $4,203.66 in Favor |
|  | Daniel Toner & Associates | Vote $10,935.00 in Favor |
|  | Roundup Funding (Assignee of Chase Bank Credit Card) | Vote $8,408.82 Against |
| Class 3B – Convenience Class Claims | Commonwealth Edison | Vote $800.00 in Favor |

**EXHIBIT B**